UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARTA BIDA, on behalf of herself and all other similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SHUSTER MANAGEMENT LLC; SHUSTER PROPERTY MANAGEMENT LLC; 333 FAIRMONT CONDOMINIUM ASSOCIATION, INC.,**<br><br>**Defendants.** | Civ. No. 18-10975-KM-JBC<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.

This matter comes before the Court on the motions of defendant 333 Fairmont Condominium Association, Inc. ("Association") (DE 3) and Shuster Property Management LLC ("Property Management") (DE 10) to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is plaintiff Marta Bida's motion to file her opposition to Property Management's motion out of time. (DE 13).

The plaintiff, Marta Bida, is the owner of a condominium unit located on Fairmont Avenue in Jersey City, New Jersey. The Association and Property Management have certain rules that owners are required follow if they wish to rent out their units to others. Those rules require that the owner obtain a credit report and background check from the prospective tenant, as well as a copy of the tenant's social security card.

Bida claims that these rules cause a disparate impact on the basis of national origin, ethnicity, ancestry, and race. Her complaint alleges individual and class action claims under the New Jersey Law Against Discrimination ("NJLAD") and the Federal Fair Housing Act ("FHA"). She also alleges a claim of civil conspiracy against the defendants.

1

For the following reasons, Bida's motion to file an opposition out of time is granted. Defendants' motions to dismiss the complaint are granted without prejudice to the filing of an appropriate motion to amend within thirty days.

## I. Background[1]

Bida owns a condominium unit located on Fairmont Avenue in Jersey City, New Jersey. (Compl. ¶1). Defendant Association is a condominium association formed under the New Jersey Condominium Act. (Compl. ¶2; N.J. Stat. Ann. § 46:8B-1, *et. seq.*). Defendant Shuster Property Management LLC is the property manager. (Compl. ¶3).

As part of its "rules and regulations," the Property Manager and Association disseminate a "leasing rider," which sets forth certain obligations on unit owners who wish to rent their units to others. (Compl., Exhibit A). Bida, as owner, is permitted to rent out her unit provided that she secures a social security card, background check, and credit check from the prospective tenant. (Compl. ¶¶12, 16). The leasing rider, attach as an exhibit to the Complaint, provides as follows:

> The Building has certain rules regarding the leasing of apartment which must be acknowledge and agreed to by all purchasers of units in the building.
>
> Please be advised of the following:
>
> 1. All tenants must be approved by the Managing Agent.
> 2. No lease may be signed for a period of less than one (1) year.
> 3. An application fee of $250.00 payable to Shuster Property Management is required.

---

[1] For purposes of these motions, the allegations of the Complaint are accepted as true. For ease of reference, citations to the record will be abbreviated as follows:

| | | |
|---|---|---|
| DE __ | = | Docket entry in this matter; |
| Compl. | = | Complaint (DE 1-1); |
| DABr. | = | Defendant Association's moving brief (DE 3-1); |
| DMBr. | = | Defendant Property Management's moving brief (DE 10-1); |
| PBr. | = | Plaintiff's brief in opposition (DE 4); |
| DF Reply | = | Association's reply brief (DE 5). |

2

>       4. A copy of the tenant/s ID and SS Card is required.
>       5. Filled out application
>       6. A copy of credit report and background check is required.
>       7. Minimum of 2 referrals
>       8. A copy of tenant lease is required.

(Compl. Ex. A). Bida claims that the requirements of the leasing rider do not have a legitimate purpose and "limit housing for individuals of a certain national origin, ethnicity, ancestry, and race." (Compl. ¶¶17, 19, 24). Bida further asserts that the financial relationship is between the owner and the tenant, not between the defendants and the tenant, so the requirement of social security cards, credit reports, and background checks for prospective tenants does not have a legitimate rationale. Its real purpose and effect, she alleges, is to limit the class of individuals who live in the condominium complex. (Compl. ¶¶25, 38). She also asserts that the leasing rider disparately impacts "individuals less likely to have stable credit, strong references, and immaculate backgrounds." (Id.).

On July 2, 2018, Bida filed suit in New Jersey Superior Court, Hudson County, asserting both individual and class action claims under the NJLAD and FHA, as well as civil conspiracy. (See Compl.). On June 25, 2018, Association removed the complaint to this Court based on federal question jurisdiction under the FHA. (DE 1). Property Management has consented to the removal. (DE 12).

On July 2, 2018, Association filed a motion to dismiss the entire Complaint under Rule 12(b)(6). (DE 3). On July 23, 2018, Bida filed an opposition to this motion. (DE 4). On November 7, 2018, Property Management joined the Association's motion and additionally sought dismissal of the class action claims. (DE 10).

Bida did not file a timely separate opposition to Property Management's motion. On March 8, 2019, this Court issued an Order to Show Cause that Property Management's motion to dismiss would be treated as unopposed and granted should Bida fail to file an opposition with a motion to file out of time. (DE 11). On March 14, 2019, Bida filed an opposition and motion to file out of

3

time. (DE 13). Based on the representations in Bida's accompanying certification, the motion to file out of time will be granted and the Court will consider her opposition.

## II. Standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In that regard, courts may consider matters of public record and exhibits attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim).

Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

### III. Discussion

Defendants' principal argument is that Bida's complaint fails to provide a factual and legal basis to suggest that the required production of social security cards, credit reports, and background checks results in an unlawful disparate impact on the basis of national origin, ancestry, or ethnicity.[2]

---

2    The Association also contends that it does not actually enforce these requirements. That fact, however, is not in the complaint, and I must accept the allegations pleaded in the complaint as true at this stage. *See* Fed. R. Civ. P. 12(b)(6); *New Jersey Carpenters*, 760 F.3d at 302.

The FHA prohibits discrimination in the sale or rental of housing based on a person's "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604. The FHA applies to all dwellings, including privately-owned ones. *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 898 (E.D. Pa. 2017). Under § 3604, a plaintiff may bring either a disparate treatment claim or a disparate impact claim *Id.* at 902 (citing *Cmty. Servs. v. Wind Gap. Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2015)); *see also Mount Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 384 (3d Cir. 2011).

To establish a disparate impact claim, a plaintiff must show that the challenged practices or policies "have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale." *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmties. Project, Inc.*, 135 S. Ct. 2507, 2513, 2525, 192 L. Ed. 2d 514 (2015). Under the framework governing disparate impact claims, the plaintiff must first prove that the defendant's policies or practices have a greater adverse impact on persons within a protected class than they have on non-protected persons. *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 466-67 (3d Cir. 2002); *Dr. Gertrude A. Barber Ctr., Inc. v. Peters Twp.*, 273 F. Supp. 2d 643, 655 (W.D. Pa. 2003).

To meet this standard, a plaintiff must show "(1) the occurrence of certain outwardly neutral practices" or policies, "which have (2) a significantly adverse or disproportionate impact on [protected persons]." *Peters Twp.*, 273 F. Supp. 2d at 655 (citing *Lapid Laurel*, 284 F.3d at 467); *see also Inclusive Cmtys. Project, Inc.*, 135 S. Ct. at 2523 (describing the importance of "[a] robust causality requirement" to ensure that "[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact").

However, "it is not enough to simply allege that there is a disparate impact . . . or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson*, 544 U.S. 228, 241, 125 S. Ct. 1536, 161 L. Ed. 2d 410 (2005)). A plaintiff must show causation by statistical evidence sufficient to prove that the practice or policy resulted in discrimination. A plaintiff who "fails

to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact". *Inclusive Cmtys. Project, Inc.*, 135 S. Ct. at 2523; *see Hanrahan v. Blank Rome LLP*, 142 F. Supp. 3d 349, 354 (E.D. Pa. 2015) ("the plaintiff must demonstrate causation by offering statistical evidence sufficient to show that the practice or policy resulted in discrimination.").

If the plaintiff establishes a *prima facie* claim, then the burden shifts to the defendant to establish "that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives were available." *Lapid Laurel*, 284 F.3d at 467; *see also Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148 (3d Cir. 1977) (providing that defendant must show that the non-discriminatory reason "must serve, in theory and practice, a legitimate, bona fide interest of the. . . defendant, and . . . that no other alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact.").

"This step of the analysis is analogous to the business necessity standard under Title VII and provides a defense against disparate-impact liability." *Inclusive Cmtys. Project, Inc.*, 135 S. Ct. at 2523. Courts have recognized that background checks, including credit checks, may legitimately serve as a basis for denying a rental application. *See Pasquince v. Brighton Arms Apartments*, 378 N.J. Super. 588, 596, 876 A.2d 834, 839 (App. Div. 2005); *Wilson v. Sixty-Six Melmore Gardens*, 106 N.J. Super. 182, 185, 254 A.2d 545, 546 (App. Div. 1969).

Turning to Bida's New Jersey law-based claim, the NJLAD provides that the following constitutes "unlawful discrimination":

> g. For any person, including but not limited to, any owner, lessee, sublessee, assignee or managing agent of, or other person having the right of ownership or possession of or the right to sell, rent, lease, assign, or sublease any real property or part or portion thereof, or any agent or employee of any of these:
> . . .

> (3) To print, publish, circulate, issue, display, post or mail, or cause to be printed, published, circulated, issued, displayed, posted or mailed any statement, advertisement, publication or sign, or to use any form of application for the purchase, rental, lease, assignment or sublease of any real property or part or portion thereof, or to make any record or inquiry in connection with the prospective purchase, rental, lease, assignment, or sublease of any real property, or part or portion thereof which expresses, directly or indirectly, any limitation, specification or discrimination as to race, creed, color, national origin, ancestry . . .

N.J. Stat. Ann. §10:5-12(g)(3). The New Jersey Supreme Court has held that the proofs required for a disparate impact claim under the NJLAD are coextensive with those required by federal law. *Gerety v. Atlantic City Hilton Casino Resort*, 184 N.J. 391, 400 (2005) (citing *Esposito v. Twp. of Edison*, 306 N.J. Super. 280, 289-90 (App. Div. 1997), *certif. den.*, 156 N.J. 384 (1998); 42 U.S.C. § 2000e-2(k)(1)); *see also Bell v. Tower Mgmt. Servs., L.P.*, 2010 N.J. Super. Unpub. LEXIS 1281, at *7 (Super. Ct. App. Div. June 11, 2010).

Under the pleading standards outlined above, a discrimination complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Shahin v. PNC Bank*, 625 F. App'x 68, 70 (3d Cir. 2015) (citation omitted).

The disparate impact claim in the complaint specifically identifies a facially neutral policy: the rules requiring a credit report and background check, as well as the production of a social security card. However, Bida's complaint, as currently pled, insufficiently alleges that this policy has a disparate impact on protected persons. *Cf. Williams v. Compassionate Care Hospice*, Civil Action No. 16-2095 (JLL) (JAD), 2016 U.S. Dist. LEXIS 101669, at *12 (D.N.J. Aug. 3, 2016) (declining to dismiss complaint where plaintiff's complaint cited EEOC guidance establishing that use of criminal background checks "have a disparate impact based on race and national origin."). In particular, the complaint does not contain allegations sufficient to support a plausible inference that the Association's and Property Manager's "rules and

regulations" had, or have, a disproportionately adverse effect on minorities.[3] Bida has not factually alleged a discriminatory effect, or that the policies impacted minorities in a more statistically significant way than non-minorities. *See Wards Cove Packing Co., Inc., v. Atonio*, 490 U.S. 642, 650-51, 104 L. Ed. 2d 733, 109 S. Ct. 2115 (1989).

Nor does Bida's complaint does not allege that she attempted to rent her unit to a prospective tenant, who was part of a protected class, and that the prospective tenant's rental application was denied because of his or her failure to meet any of the challenged requirements. Bida's complaint does not provide any examples of prospective tenants who attempted to rent units from other unit owners. Bida's complaint, instead, relies primarily on conclusory statements about the hypothetical effect of such requirements.[4]

---

[3]   Bida has attached to her opposition brief three exhibits: (1) a document purporting to be from the Social Security Administration outlining how a non-citizen can obtain a social security card; (2) a document dated April 4, 2016, appearing to be guidance from the General Counsel at the U.S. Department of Housing and Urban Development on the use of criminal records by housing providers; and (3) a document titled "2016 State of Housing in Black America." These documents are not accompanied by a declaration attesting to their authenticity or accuracy. In any event, in assessing the sufficiency of a complaint, the Court may only consider such documents if they are attached to or relied on in the Complaint, or subject to judicial notice. Even if certain documents are subject to judicial notice, a court may take judicial notice only of the existence of the document, not for the truth contained therein. *See Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001).

The Court will not consider Bida's after-the-fact allegations or exhibits in determining the sufficiency of the complaint under Rule 12(b)(6). *See Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotations omitted). Of course, the facts therein may be alleged, if appropriate, in any amended complaint. Whether they actually support Bida's allegations concerning the effect of credit checks, background checks, or SSNs, remains to be seen.

[4]   *See, e.g.*, Compl. ¶17 ("Neither Shuster Property nor the Association maintain a legitimate purpose in the promulgation and enforcement of the Leasing Rider which effectively seeks to limit housing for individuals of a certain national origin, ethnicity, ancestry, and race."); ¶19 ("The Leasing Rider, which mandates among other things, the production of social security cards, is a form/application which directly and indirectly discriminates against individuals based on national origin, ancestry, and race."); ¶20 ("Shuster Property and the Association disseminate the Leasing Rider

9

Her failure to make these basic factual foundational allegations require this Court to conclude that she has not asserted a disparate impact claim under NJLAD or FHA. *See Hanrahan*, 142 F. Supp. 3d at 354 (dismissing complaint where the statistics pled by plaintiffs failed to show causation).

Because Bida has failed to state an underlying violation of law, her claim that such a violation was the object of a civil conspiracy is also dismissed. *See Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 497 (D.N.J. 1998) ("Plaintiff cannot bring an action alleging civil conspiracy unless defendants committed an act which would be actionable even without the conspiracy.").

However, I will decline defendants' invitation to dismiss this action with prejudice. The usual rule of this Circuit is that an initial dismissal, like this one, is without prejudice, and I see no reason to depart from it. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

---

which directly and indirectly limits the ability of individuals of a certain national origin, ancestry and race, to find housing."); ¶21 ("The act of disseminating the Leasing Rider serves to proactively limit and deter the leasing of property based on national origin, ancestry, ethnicity, and race."); ¶25 ("Moreover, requiring the production of credit checks and background checks for Prospective Tenants with whom the Defendants have no direct financial interest, is clearly intended to limit the class of individuals in the condominium, which also disparately impacts individuals less likely to have stable credit, strong references, and immaculate backgrounds."); ¶42 ("Defendants, by disseminating, proposing and/or mandating the Leasing Rider, are in violation of the NJLAD as the Leasing Rider qualifies as an effort to directly or indirectly limit housing based on national origin, ancestry, ethnicity, and race."); ¶43 ("Defendants, by requiring fee simple unit owners to gather credit checks and background checks on Prospective Tenants, individuals with whom Defendants have no direct financial interest or legal relationship, prior to Defendants approving same for housing, has violated the NJLAD based on ethnicity, ancestry, national origin, and race."); ¶44 ("Defendants, by requiring the production of social security cards prior to approving a prospective occupant for housing, has violated the FHA by intentionally discriminating against individuals based on ethnicity, ancestry, national origin and certain classes less likely to be able to produce social security cards.").

## IV. Conclusion

For the reasons set forth above, Bida's motion to file out of time is granted. (DE 13). Defendants' motions to dismiss are granted. (DE 3, 10). This dismissal is without prejudice to the filing, within 30 days, of a properly supported motion to amend the complaint to correct the deficiencies outlined in this Opinion.

An appropriate order follows.

Dated: March 14, 2019

**Kevin McNulty**
**United States District Judge**

11